**AUTO CLUB INSURANCE ASSOCIATION, Plaintiff–Appellant,**

**v.**

**HEALTH AND WELFARE PLANS, INC., et al., Defendants–Appellees,**

**Health and Welfare Plans, Inc., Defendant and Third–Party Plaintiff–Appellee,**

**Automated Benefit Services, Inc., Third–Party Defendant–Appellee.**

**No. 91–1617.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1992.

Decided April 10, 1992.

**1.** Third-party defendant-appellee Automated Benefit Services, Inc., impleaded as a third-par-

Clair W. Hoehn, argued, briefed, Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor, Detroit, Mich., for plaintiff-appellant.

Alexander B. Ritchie, Michael J. Connolly, Cross & Wrock, Detroit, Mich., Thomas G. Olp, briefed, William J. Rodgers, argued, briefed, Collier, Shannon & Scott, Washington, D.C., for defendants-appellees.

John S. Barbour, Gail A. Craven, Detroit, Mich., for third-party defendant-appellee.

Before: MERRITT, Chief Judge; and JONES and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

On June 28, 1989, plaintiff-appellant, Auto Club Insurance Association (the "Auto Club"), brought this action in Michigan state court against defendants-appellees Health and Welfare Plans, Inc., National Labor Union Health and Welfare Fund (the "Fund"), George Vitale, and Joseph Marullo (collectively "defendants" or "appellees").[1] The Complaint alleged several state-law causes of action arising out of the refusal of the Fund, in accordance with its coordination of benefits clause, to reimburse the Auto Club, which also had a coordination of benefits clause in its policy, for payments made by the Auto Club for the medical expenses of one Kenneth Spina. Following removal of the action to United States District Court for the Eastern District of Michigan, pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), and 28 U.S.C. Section 1441, on April 23, 1991, the district court granted defendants' motion for summary judgment on the ground that ERISA preempted the state law which would have required that the

ty defendant, was the Fund Plan Manager.

Fund be the primary insurer under these circumstances.

Jurisdiction was proper in the district court under 29 U.S.C. Section 1132(a)(1)(B). This court has jurisdiction pursuant to 28 U.S.C. Section 1291. The appeal is timely under Rule 4(a), Fed.R.App.P.

The issues before us are two: whether ERISA operated to relieve the Fund from any liability for payment of Spina's medical expenses, and whether there was, regardless of federal preemption of state law, a settlement agreement between these parties which would preclude the granting of summary judgment for the Fund. We hold that the district court was correct that ERISA does preempt the Michigan statute at issue in this case, but that the fact that the state statute is preempted is not dispositive of the outcome of the case, and thus the judgment of the district court must be reversed and this case remanded.

### I.

On June 28, 1983, Kenneth Spina was injured in an automobile accident. At the time, the Auto Club was Spina's no-fault automobile insurer. Spina also was covered under his father's policy with the Fund, a self-insured plan that concededly is governed by the provisions of ERISA. Appellee Health and Welfare Plans, Inc. was the Fund Administrator, and George Vitale and Joseph Marullo were the Fund trustees. Both the Auto Club policy and the Fund plan contained coordination of benefits clauses. Each of these clauses purported to place on the other insurer primary liability for expenses arising out of injuries incurred in automobile accidents.

When demand for payment was made on Spina's behalf, both the Auto Club and the Fund denied coverage. The Fund trustees contended that they had exercised their discretion [2] to determine that the Fund plan excluded coverage for injuries resulting from automobile accidents. The Auto Club contended that Michigan law imposed on the Fund, a health care plan, rather than on the Auto Club, a no-fault insurer, primary liability for automobile-related injuries. MICH.COMP.LAWS § 500.3109a (1991) ("500.3109a") (MICH.STAT.ANN. § 24.13109(1)).[3] Because both insurers had denied primary coverage and thus refused to pay Spina's insurance bills, on June 26, 1984, Spina's guardian and conservator brought an action in state court against both insurers in an effort to recover benefits.

In 1987, the parties stipulated to dismissal of the state court action, without prejudice. The Auto Club alleges that the dismissal was pursuant to a settlement agree-

---

**2.** Several provisions of the Fund Trust Agreement afford the trustees discretion to make benefit determinations. *See, e.g.,* ART. VI, Section 3 ("The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the Employees, their families and dependents."); *id.* at Section 4 ("Benefits under the Plan shall be provided by such means as the Trustees in their sole discretion determine."); ART. IV, Section 3 ("The Trustee [*sic*] shall have the power to construe the provisions and terms of this Agreement and of the Plan, and any construction adopted by the Trustees shall be binding on Employers, Unions, and Employees and their families, dependents, beneficiaries, and legal representatives.").

**3.** Section 500.3109a reads, in its entirety, as follows:

§ 500.3109a Deductibles and exclusions; approval; application. An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

Section 500.3109a thus requires no-fault insurers to "offer coordination of benefits at reduced premiums when the insured has 'other health and accident coverage.'" *Federal Kemper Ins. Co. v. Health Ins. Admin., Inc.,* 424 Mich. 537, 546, 383 N.W.2d 590, 594 (1986) (quoting, in part, 500.3109a).

In construing 500.3109a, the Supreme Court of Michigan has held that, where coordination of benefits clauses in a no-fault policy and a health insurance policy each provide that the other insurer is primarily liable, primary liability falls on the health insurer. *Federal Kemper,* 424 Mich. at 551, 383 N.W.2d at 596.

ment which provided that the Auto Club would make certain benefits payments to Spina; in return, if the outcome of a case then pending before the Sixth Circuit, *Northern Group Services, Inc. v. State Farm Mut. Automobile Ins. Co.*, 833 F.2d 85 (6th Cir.1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), were favorable to the Auto Club's legal position, the Fund would reimburse the Auto Club, with interest, for payments made to Spina.

The decision in *Northern Group Services*[4] *did support the Auto Club's position that the Fund, rather than the Auto Club, was primarily liable for Spina's benefits. The Fund, however, denied, and continues to deny, that there was any settlement agreement and declined to reimburse the Auto Club for any payments made to Spina. Following this refusal by the Fund to reimburse the Auto Club, the Auto Club moved to reopen the original state-court action, but this motion was denied. Subsequently, on June 28, 1989, the Auto Club filed in state court the present action, which the Fund then removed to federal court. The Complaint alleged causes of action for breach of contract, based on the purported settlement agreement, and subrogation, unjust enrichment, and recoupment, all based on the Fund's alleged duty to reimburse the Auto Club for payments made on Spina's behalf.*

On April 6, 1990, the Fund moved for judgment on the pleadings or, alternatively, summary judgment on all of the Auto Club's claims. The Auto Club cross-moved for summary judgment as to liability, contending that it was entitled as a matter of law to recover on the unjust enrichment and subrogation claims.[5] On June 7, 1990, the district court issued a Memorandum Opinion and Order in which it denied the Fund's summary judgment motion and granted summary judgment to the Auto

Club on its unjust enrichment and subrogation claims. The claims for breach of contract and recoupment were dismissed, without prejudice, as moot. The district court also denied the Fund's motion for a stay of proceedings pending the outcome of a decision then pending in the United States Supreme Court, *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("*FMC*"). The Fund had argued, unsuccessfully, that a stay should be granted because the decision in that ERISA preemption case arguably would be dispositive of the present case.

On January 18, 1991, after the decision in *FMC* had been handed down,[6] the Fund filed a motion for reconsideration in light of that case. On March 12, 1991, the district court issued an Order stating that the motion would be taken under advisement. The Order also stated that "[t]he court reserves the right to set aside its previous orders in this matter, including its dismissal without prejudice of Count I [breach of contract] of the Complaint." (footnote omitted). The court ordered the parties to submit supplemental briefs addressing the issue of what effect the *FMC* case would have on the parties' liability in the present case, assuming that *FMC* mandated ERISA preemption. In a footnote, the court also indicated that it had never reached the merits of the breach of contract claim, but that, "[i]n reconsidering its opinion of June 7, 1990, the court may also want to reconsider plaintiff's breach of contract claim."

On April 23, 1991, the court issued a Memorandum Opinion and Order granting the Fund's motion for reconsideration, vacating the June 7, 1990, Order that had granted summary judgment to the Auto Club, and granting the Fund's motion for summary judgment on the basis that the ERISA plan's coordination of benefits clause prevailed over the Auto Club's non-ERISA coordination of benefits clause. It

---

**4.** The *Northern Group Services* decision was handed down on November 13, 1987.

**5.** The Auto Club did not seek summary judgment on Count I, the breach of contract claim. Appellant's Brief at 4.

**6.** *FMC* was decided on November 27, 1990.

is from this judgment that the Auto Club has timely appealed.

## II.

■ The analysis of the preemption issue is set out in the ensuing paragraphs of this opinion. However, because we hold that the pre-emption of the Michigan statute, 500.3109a, does not resolve the conflict between the two coordination of benefits clauses at issue here, this case must be remanded, first, for a determination of whether the conflict between those provisions must be reached at all in light of the claim by the Auto Club that the Fund breached the settlement agreement which resulted in the dismissal of the original case in state court.

In its Memorandum Opinion and Order of June 7, 1990, the district court granted summary judgment for the Auto Club on two of the four counts in the Complaint. The breach of contract and recoupment claims were dismissed, without prejudice, as moot. In response to the Fund's motion for reconsideration, in its March 12, 1991, Order, the district court expressly ordered the parties to submit supplemental briefs on the effect that ERISA preemption (under *FMC*) would have on liability. In a footnote, the court reserved the right to set aside its earlier dismissal of Count I of the Complaint.[7]

Subsequently, in its final Memorandum Opinion and Order of April 23, 1991, the court vacated its June 7, 1990, Order and granted summary judgment for the Fund on the basis of ERISA preemption. However, in the April 23 Opinion, there is no mention of Count I of the Complaint, the breach of contract claim.[8] We, therefore, without expressing any opinion as to the merits of this claim, remand to enable the

district court to clarify what basis, if any, exists for recovery under this breach of contract claim.

This case also must be remanded to enable the district court to re-examine the competing coordination of benefits clauses in light of the analysis set forth herein.[9] Prior to the Supreme Court decision in *FMC*, this court had decided two recent cases that construed the reach of 500.-3109a: *Northern Group Services, supra,* and *Liberty Mutual Ins. Co. v. Iron Workers Health Fund of E. Mich.,* 879 F.2d 1384 (6th Cir.1989). In *Northern Group Services,* we held that 500.3109a, as interpreted by the Supreme Court of Michigan in the earlier *Federal Kemper* decision, was not preempted by federal law and, therefore, was applicable to an ERISA plan that, like the Fund plan here, contained a coordination of benefits clause. In *Liberty Mutual,* however, we held that (assuming Michigan courts, in the first instance, would construe 500.3109a to extend this far), where a provision in an ERISA plan expressly excluded *any* benefits for injuries arising from automobile accidents, and not just primary coverage for such benefits, federal law would preempt 500.3109a insofar as it purported to regulate this provision.

In the *FMC* decision, the Supreme Court addressed the issue of whether a Pennsylvania antisubrogation statute that conflicted with a subrogation clause in a self-insured ERISA plan was preempted. *FMC,* 111 S.Ct. at 405. After examining the ERISA preemption, saving, and deemer clauses, as well as relevant Supreme Court precedent, the Court concluded that self-insured ERISA plans were not deemed to be insurance companies for purposes of ERISA; that state laws purporting to regu-

---

**7.** In light of our remand for reconsideration of Count I of the Complaint, it is unnecessary to address the Auto Club's allegation that the district court did not give Auto Club adequate notice and an opportunity to respond to the Fund's motion for summary judgment as to Count I of the Complaint.

**8.** The district court's Opinion does not make clear, for example, whether the court found the claim for breach of contract deficient on the

merits as a matter of law; found the claim to have been preempted by ERISA as a matter of law; or disposed of the claim on another theory.

**9.** Depending on whether the district court finds that an enforceable settlement agreement between the Auto Club and the Fund came into existence in 1987, resolution of this second issue may be unnecessary.

late these plans were, to that extent, preempted; and that the Pennsylvania anti-subrogation statute was such a law. *Id.* at 409–11. As district courts within this Circuit have suggested,[10] and as we now hold, the *FMC* decision effectively has overruled *Northern Group Services* insofar as self-insured ERISA plans are concerned. Thus, we conclude that self-insured ERISA plans, including self-insured ERISA plans containing coordination of benefits clauses, are not reached by 500.3109a.

However, the fact that 500.3109a cannot mandate priority for the Auto Club coordination of benefits clause over the corresponding Fund clause is not, by itself, dispositive of this case. There still exists here the issue of which of two apparently valid insurance policies containing what would appear to be irreconcilable "other insurance" clauses is liable for payment of Kenneth Spina's medical expenses. Another recent Supreme Court case, *Firestone v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), also is instructive on this issue. In *Firestone*, the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo* review of the trustee's benefit determination. *Id.* at 115, 109 S.Ct. at 956. On the other hand, the Court directed that where an ERISA plan expressly afforded discretion to trustees to make benefit determinations, the decision to deny benefits should be reviewed only "to prevent an abuse by the trustee of his discretion." *Id.* at 111, 109 S.Ct. at 954 (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 (1959)). Under this latter standard, the trustee's denial of benefits under a plan would be upheld, regardless of whether the reviewing court thought it was the correct interpretation of the plan, so long as it was "reasonable." *Id.* at 111, 109 S.Ct. at 954.

On the record before us, and especially in light of the fact that the district court, in its April 23, 1991, Opinion, made no finding regarding whether the Fund trustees acted within the discretion afforded them by the plan when they denied Spina benefits, *see supra* at note 2, we are unable to determine which of the two coordination of benefits clauses, if either, should prevail. Therefore, we will remand this case to enable the district court to address this issue. By way of guidance to the district court, we make the following additional observations.

By its terms, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The fact that, after *FMC*, the Auto Club policy no longer has priority over the Fund plan by virtue of 500.3109a does not, we reiterate, render the Auto Club coordination of benefits clause *ipso facto* void. Likewise, the mere fact that an ERISA plan affords trustees discretion, as it does here, does not dictate that a court, under *Firestone*, must defer to whatever benefits decision the trustees have made. This deferential standard of review is only appropriate when the trustees have acted within the bounds of the discretion given them, that is, have exercised their given discretion to make a reasonable benefits determination. *Anderson v. Great W. Life Assurance. Co.*, 942 F.2d 392, 394–95 (6th Cir.1991) (Although *Firestone* makes clear that *de novo* review is the norm, where a trustee acts within his grant of discretion, a court will only review his determination for reasonableness). On remand, therefore, the first inquiry as to this issue should be whether, in light of the discretion delegated to the trustees, and in light of the language in the Fund coordination of benefits clause, the trustees made a reasonable decision not to pay Spina benefits.[11]

---

10. *See Transamerica Ins. Group v. Ryder Sys., Inc.*, 1991 WL 337423, 1991 U.S. Dist.LEXIS 10061, at 2–3 (W.D.Mich. July 18, 1991); *Allstate Ins. Co. v. Michigan Carpenters' Council Health & Welfare Fund*, 760 F.Supp. 665, 668 (W.D.Mich.1991); *Farmers Ins. Exch. v. Central States, Southeast and Southwest Health and Welfare Fund*, 1990 WL 359762, 1990 U.S.

Dist.LEXIS 19323, at 2 (E.D.Mich. July 23, 1990).

11. If, on remand, the district court should determine that a deferential standard of review is proper, but the trustees' decision fails to pass muster even under this standard, there presumably is no reasonable way to read the Fund plan

If, after having reviewed the trustees' decision and the Fund plan language, the district court determines that denial of benefits to Spina was reasonable, then the next issue is the effect of that proper discretionary decision on the conflict between the two coordination of benefits clauses. Put another way, the district court then must determine how a court should resolve a conflict between two (presumably) unambiguous, seemingly valid, and irreconcilable coordination of benefits clauses, one contained in an ERISA plan and one in a non-ERISA policy.

Our research discloses that one other court has addressed precisely this issue in the same factual context, albeit in a case that preceded the *FMC* and *Firestone* decisions. *See Winstead v. Indiana Ins. Co.*, 855 F.2d 430 (7th Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). In *Winstead*, plaintiffs-appellants were trustees of a self-insured ERISA fund. The defendant-appellee, Indiana Insurance Company ("Indiana Insurance"), was an insurance company authorized to sell insurance in Michigan. Renee Crampton was insured by both the ERISA fund and Indiana Insurance. Each insurance policy contained a coordination of benefits clause that purported to impose primary liability on the other for injuries arising out of automobile accidents.

On August 31, 1985, Crampton was injured in an automobile accident. The ERISA fund paid Crampton's medical costs and then filed an action to have Indiana Insurance declared primarily liable for those costs. The ERISA fund subsequently moved for summary judgment, contending that ERISA preempted state law, thereby precluding the imposition on the fund of primary liability based on 500.3109a and *Federal Kemper*. Indiana Insurance also moved for summary judgment, contending that, since there was no controlling federal

case law, a federal court should look to state law, as interpreted by the *Federal Kemper* decision,[12] and resolve the conflict between clauses in favor of Indiana Insurance.

The district court first found that ERISA preempted Michigan law to the extent that it attempted to impose on the ERISA fund greater liability than that which was provided for in the policy. However, the district court refused to conclude that "the contested provision of Crampton's insurance contract with Indiana Insurance was encompassed within the scope of ERISA preemption and therefore automatically rendered unenforceable." *Winstead*, 855 F.2d at 433. Instead, the district court found that these two coordination of benefits clauses were mutually repugnant, voided them both, and held the fund and the insurance company liable *pro rata* for the payment of Crampton's benefits.

The Seventh Circuit affirmed the result and the reasoning of the district court: "We agree with the conclusion of the district court that the relevant provision of the Indiana Insurance policy is not rendered void merely as the result of Crampton's concurrent ERISA coverage." *Id.* Although Crampton's decision to purchase non-ERISA insurance did, in the appeals court's view, "relate to" an ERISA plan, it was also "a private contractual matter ... in no way compelled by state law." *Id.* Because "[t]he choice to avail oneself of such a [non-ERISA] policy is strictly a personal one, [it is] ... thus a matter that ERISA did not intend to preempt." *Id.*

Having determined that ERISA did not "cause[ ] the Fund's coordination of benefits provision to supersede the Indiana Insurance policy," *id.*, the district court, applying federal common law, found *pro rata* apportionment appropriate. The Seventh Circuit noted that this issue had been con-

as purporting to impose primary liability on other insurers. If the district court were to find this to be the case, then there would be no conflict; the coordination of benefits clause contained in the Auto Club policy, therefore, would operate to shift primary liability to the Fund for Spina's benefit payments.

12. The appeals court also held that, because Indiana Insurance had not argued the *Northern Group Services* ERISA preemption analysis in the district court, that argument had been waived for purposes of appeal. *Winstead*, 855 F.2d at 435.

 

sidered, but not decided, in a Third Circuit case, *Northeast Dep't Int'l Ladies Garment Workers Union v. Teamsters Local 229,* 764 F.2d 147, 161 n. 13 (3d Cir.1985). In that case, the Third Circuit observed that other courts, faced with conflicting coordination of benefits clauses, had declared them to be mutually repugnant, voided them both, and apportioned liability *pro rata.*[13] The Seventh Circuit found this approach, the one adopted by the district court, "solomonic [and] ... eminently fair and equitable." *Id.* at 434. *See also* Appleman § 4909, at 399; *Farm Bureau Mut. Ins. Co. v. Horace Mann. Ins. Co.,* 131 Mich.App. 98, 103–04, 345 N.W.2d 655, 657 (1983) (rejecting conflicting "other insurance" clauses as mutually repugnant and ordering *pro rata* apportionment of liability).[14]

### III.

This case is reversed and remanded, first, to enable the district court to clarify its basis for dismissal of Count I of the Complaint, the breach of contract claim. Second, depending on the resolution of this issue, it may be necessary for the court to reach the ERISA issue. If so, then the court initially must determine whether the Fund trustees acted within their discretion in denying benefits. Should the court find that discretion properly was exercised, the court then must resolve the conflict between the two coordination of benefits clauses.

---

**13.** This approach to apportioning liability has been described as the minority view. *See, e.g., Farm Bureau,* 131 Mich.App. at 103–04, 345 N.W.2d at 657. It also has been described as "[o]ne of the popular approaches to prorating...." 8A Appleman, *Insur.Law and Prac.*

§ 4909 (1981 & Supp.1991) [hereinafter "Appleman"], at 399.

**14.** We see nothing in either *Firestone* or *FMC* that is inconsistent with the foregoing analysis.