**Pat THOMPSON; Don Thompson, Plaintiffs–Appellants,**

v.

**TALQUIN BUILDING PRODUCTS COMPANY, Defendant–Appellee.**

**No. 90–2109.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1990.

Decided March 22, 1991.

F. Guthrie Gordon, III, argued (Janice L. Redinger, on brief), Gordon & Wyatt, Charlottesville, Va., for plaintiffs-appellants.

Jeffrey Grant Lenhart, argued (Gregory T. St. Ours, on brief), Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendant-appellee.

Before PHILLIPS and NIEMEYER, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

PHILLIPS, Circuit Judge:

Don and Pat Thompson (the Thompsons) challenge the district court's holding that Talquin Building Products Company's (Talquin) health plan for employees (the Plan) did not cover Don Thompson's medical expenses resulting from a motor vehicle accident. Although the Plan specifically excludes such expenses from coverage, the Thompsons claim that Virginia state law prohibits this exclusion. The district court held that the Employee Retirement Income Security Act (ERISA) preempts any Virginia state law that might regulate the Plan, and granted summary judgment to Talquin. Because we agree with the district court's reasoning, we affirm.

I

Don Thompson was injured when his trail bike collided with a feed truck on a farm right-of-way. Don, who was 17 at the time, incurred medical expenses of approxi-

mately $63,000. Don's father David Thompson was an employee of Crown Industries at the time of Don's accident. Don's mother Pat Thompson was the guarantor for his medical expenses. The appellee, Talquin Building Products Company ("Talquin"), is the successor in interest to Crown Industries.

David Thompson was covered by the Crown Industries, Inc. Health Plan ("the Plan"). The Plan also covered his dependents, including his son Don. Under the Plan, the employer contributes all funds necessary to cover employees. Employees contribute for coverage of their dependents. As authorized by the Plan, the Plan Committee obtained "stop-loss" insurance in the Plan's name to protect it against individual claims exceeding $25,000.[1] The Thompsons filed a declaratory judgment action in state court seeking a declaration that the Plan covered Don's medical expenses. Talquin removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.

Both parties filed motions for summary judgment. The district court granted Talquin's motion because the Plan explicitly excluded medical expenses resulting from motor vehicle accidents. Although the Thompsons contended that Virginia state law prohibited such exclusions, the district court held that Virginia law did not apply because the plan was self-funded and therefore under ERISA it was free from state regulation.

This appeal followed.

## II

■ The Thompsons challenge the district court's holding that ERISA preempts state law for the purposes of interpreting the Plan. The Plan clearly qualifies as an employee welfare benefit plan as defined in ERISA § 1002(1)(A). Section 1002(1)(A) provides that

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore

or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits....

29 U.S.C. § 1002(1)(A). In order to determine whether ERISA preempts state law in this matter, we must examine three interacting ERISA provisions. *FMC Corp. v. Holliday*, — U.S. —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732–33, 105 S.Ct. 2380, 2385–86, 85 L.Ed.2d 728 (1985). We look first at § 1144(a), which states that

[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). The Supreme Court has construed this basic preemption clause very broadly. *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2388; *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419, 421 (4th Cir.1985). Relying on the broad scope of § 1144(a), Talquin argues here, as it did successfully in the district court, that ERISA preempts any Virginia law requiring coverage of expenses incurred from motor vehicle accidents.

In answer, the Thompsons claim that the Plan is exempted from ERISA preemption under § 1144(b)(2)(A), the insurance "saving clause." This clause states that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Thompsons

---

1. Stop-loss coverage is commercially purchased insurance, which covers Talquin on employee claims in excess of $25,000.

contend that the Plan qualifies as an insurance policy under state law, and therefore the "saving clause" allows for application of Virginia state insurance law to the Plan.

■ Although under the "saving clause," any state law regulating insurance policy terms withstands ERISA preemption, self-funded employee benefit plans are not covered by the clause. *FMC Corp.,* 111 S.Ct. at 409; *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393; *Powell,* 780 F.2d at 423. The "saving clause" is limited by § 1144(b)(2)(B), known as the "deemer clause," which provides that no employee benefit plan

> shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for the purposes of any law of any State purporting to regulate insurance companies, [or] insurance contracts....

29 U.S.C. § 1144(b)(2)(B).

Talquin contends that the Plan, which is a self-funded employee benefit plan, is covered by the "deemer clause," and cannot be regulated by state insurance law.[2] As we have held, claims based on state laws that regulate insurance against an employer who sponsors an employee benefit plan "are not exempted from preemption by the insurance saving clause." *Powell,* 780 F.2d at 423. In *Metropolitan Life,* the Supreme Court recognized that self-funded employee benefit plans would be free from state regulation: "We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." 471 U.S. at 747, 105 S.Ct. at 2393. Because Talquin contributes all of the funds for coverage of its employees, and employees contribute for coverage of their dependents, the Plan is self-funded and therefore falls under the "deemer clause."

■ Even so, the Thompsons argue that the "deemer clause" only applies to how Talquin creates and administers the Plan, and therefore the subject matter of the Plan remains subject to state law regulation. The Thompsons cite *Metropolitan Life* to support this point. However, as indicated above, the *Metropolitan Life* Court was distinguishing between insured and uninsured plans, not between the content of a benefit plan and its administration. The Supreme Court's recent decision in *FMC Corp.* makes it clear that the Thompsons' argument has no merit. In *FMC Corp.,* the Court explained:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulate insurance" within the meaning of the saving clause.... [S]elf-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.

111 S.Ct. at 409. Thus, so long as the Plan can be categorized as self-funded, state law cannot regulate it.

In a final effort to avoid preemption, the Thompsons also argue that because the Plan obtained stop-loss insurance to protect it against claims in excess of $25,000, it cannot be defined as self-funded. If stop-loss coverage renders the Plan insured, the Plan would be covered under the "saving clause" but not the "deemer clause," and it would be subject to state law regulation.

**2.** Talquin also argues that there is no Virginia Code provision that invalidates the Plan's exclusion from coverage of expenses incurred from motor vehicle accidents. Because we find that ERISA would preempt any such law that did exist, we need not reach this issue. The Supreme Court has recently emphasized that "[t]he preemption clause [§ 1144(a) of ERISA] is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates[s] to' an employee benefit plan governed by ERISA." *FMC Corp.,* 111 S.Ct. at 407.

This appears to be an issue of first impression in this circuit. We agree with the district court that stop-loss insurance does not convert Talquin's self-funded employee benefit plan into an insured plan. Even with the stop-loss coverage, Talquin's Plan is directly liable to Talquin's employees for any amount of benefits owed to them under the Plan's provisions. The purpose of the stop-loss insurance is to protect Talquin from catastrophic losses, it is not accident and health insurance for employees. Instead of covering employees directly, the stop-loss insurance covers the Plan itself. Thus, for the purposes of ERISA, the Plan remains self-funded even with the stop-loss insurance.

The Ninth Circuit's decision in *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161–62 (9th Cir. 1986), supports this conclusion. The Ninth Circuit held that the stop-loss insurance provision in an ERISA plan did not render that plan insured for preemption purposes:

> The stop-loss insurance does not pay benefits directly to participants, nor does the insurance company take over administration of the Plan at the point when the aggregate amount is reached. Thus, no insurance is provided to the participants, and the Plan should properly be termed a non-insured plan, protected by the deemer clause....

801 F.2d at 1161–62. *See also Brown v. Granatelli*, 897 F.2d 1351, 1354–55 (5th Cir.1990) (state law does not regulate employer's self-insured plan with stop-loss coverage; distinguishes between stop-loss insurance and primary coverage on basis that stop-loss only covers plan itself and plan is still liable to employees; does not reach ERISA preemption issue); *Moore v. Provident Life & Accident Ins. Co.*, 786 F.2d 922, 927 (9th Cir.1986) (holds that stop-loss insurance does not make self-funded ERISA plan insured plan under "saving clause" and "deemer clause;" ERISA therefore preempts state law). *But see Northern Group Servs., Inc. v. Automobile Owners Ins. Co.*, 833 F.2d 85, 91 (6th Cir.1987) (stop-loss coverage renders otherwise self-insured plan an insured plan

under ERISA). We find the Ninth Circuit's reasoning persuasive, and on its basis hold that ERISA preempts state law as applied to the Plan.

■ As a final alternative, the Thompsons contend that even if ERISA preempts state law, state law should be applied to interpret the Plan. The argument is that because ERISA does not regulate the subject matter of employee benefit plans, state law may be applied to interpret a Plan even if the Plan's provisions themselves preempt state law. This argument obviously cannot succeed, for it would defeat the essential purpose of preemption: when ERISA preempts a state law, that law cannot be allowed by indirection to regulate the ERISA employee benefit plan in question. As the Supreme Court explained,

> to interpret the pre-emption clause to apply only to state laws dealing with the subject matters covered by ERISA, such as reporting, disclosure, and fiduciary duties, would be incompatible with the provision's legislative history because the House and Senate versions of the bill that became ERISA contained limited preemption clauses, applicable only to state laws relating to specific subjects covered by ERISA. These were rejected in favor of the present language in the Act, "indicat[ing] that the section's preemptive scope was as broad as its language."

*FMC Corp.*, 111 S.Ct. at 408, quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (footnote omitted).

For the above reasons, the Thompsons may only challenge Talquin's denial of benefits under the provisions of ERISA. The Thompsons have made no allegation or showing that the Plan administrator's decision to deny benefits was improper under federal law, and we must therefore affirm the district court's grant of summary judgment to Talquin.

AFFIRMED.